[No. 15704. Department One.—March 24, 1895.]

GEORGE F. CHEVALIER, RESPONDENT, v. EDWARD COMMINS ET AL., APPELLANTS.

INSOLVENCY—PREFERENCE TO CREDITOR—ACTION BY ASSIGNEE—CONFLICT OF EVIDENCE—CREDIBILITY OF WITNESS.—In an action by an assignee in insolvency to recover personal property, or its value, alleged to have been transferred by the insolvent to the defendants within one month before the filing of the petition in insolvency, with a view to give a preference to the defendants, and with reasonable cause by them to believe that the debtor was insolvent, where there is evidence tending to show that the defendants knew of the insolvency at the time of the transfer, and that the transfer was intended to prefer them as creditors, the fact that there is other evidence for the defendants going to show that the witness who has so testified acted in bad faith in the transaction, and is not worthy of belief, and that the transfer was for another purpose without knowledge of insolvency, has no place in discussing the question as to whether there is a conflict of evidence as to the purposes for which the transfer was made.

ID.—EVIDENCE—AGREEMENT OF CREDITORS TO TURN OVER BUSINESS—INTENT OF PARTIES—VOID CONTRACT.—Evidence of an alleged understanding between the insolvent and the defendants, who were wholesale creditors selling him *goods on credit* with which to carry on business, that he would trade with no other house, and, that if, at any time, he failed in the business, or should cease to carry it on, he should turn the place and stock on hand over to the defendants, is only admissible on the question of the intent of the parties in making the transfer; but such agreement, if good between the parties, is void as against creditors, as being in direct contravention of the Insolvent Act, and constitutes no defense to an action by the assignee in insolvency to recover the property transferred in violation of the provisions of that act.

ID.—TRANSFER NOT IN ORDINARY COURSE OF BUSINESS.—A bill of sale of an entire business and stock in trade is not in the ordinary course of business, and is therefore *prima facie* fraudulent and void as to the creditors of an insolvent debtor making such transfer.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Mich Mullaney, William Grant,* and *Mullaney, Grant & Cushing,* for Appellants.

Excepting to the extent prohibited by section 55 of the Insolvent Act of 1880 Healy could lawfully have given, and defendants could lawfully have taken, the assignment and transfer of the property sued for here, in the absence of any agreement such as existed here and even with intent on the part of Healy and defendant to give and take a preference and advantage over the other creditors of Healy. (*Priest* v. *Brown,* 100 Cal. 626, and cases cited.)   And to come within the prohibition of section 55 of the Insolvent Act of 1880, even if there was no such agreement as that which existed in the case at bar, the insolvent person must be actuated with a view of giving a preference to the creditor, and the creditor must have reasonable cause to believe that the assignor is insolvent, and that the assignment is made with a view to prevent his property from coming to his assignee in insolvency. (*Hass* v. *Whittier,* 87 Cal. 614.)

*George A. Rankin,* for Respondent.

The agreement between the insolvent and the defendants is contrary to public policy, in restraint of trade, and unlawful and void. (Civ. Code, secs. 1667, 1673; *Kraemer* v. *Earl,* 91 Cal. 117.)   The sale was obviously not a sale in the ordinary course of business, and was therefore presumptively void as against an attack by the assignee in insolvency. (Insolvent Act, sec. 55.)

VAN FLEET, J.— Plaintiff brings this action as assignee in insolvency of one Healy, to recover certain personal property, or its value, which it is alleged was transferred by said Healy to defendants within one month before the filing of the petition in insolvency, with a view to give a preference to the defendants, and with reasonable cause by the latter to believe that said Healy was insolvent, in violation of section 55 of the Insolvent Act of 1880.

Verdict and judgment were for plaintiff, and from the judgment and an order denying a new trial the defendants appeal.

1. It is contended that the evidence is insufficient to sustain the verdict; that it establishes, without conflict, that defendants in taking the transfer acted in the utmost good faith, upon a valuable consideration, and without cause to believe that Healy was insolvent, or that he was making said transfer in contemplation of insolvency. And further, that it appears, without controversy, that the transfer was made and accepted in pursuance of a verbal understanding made between defendants and Healy in 1890, whereby the latter agreed that, in consideration of defendants, who were wholesale liquor dealers, selling Healy goods on credit with which to carry on business, that the latter would trade with no other house; and, if at any time he failed in the business or should cease to carry it on, he should turn the place and stock on hand over to the defendants.

The transfer complained of was made by the insolvent, Healy, who was carrying on the business of saloon-keeping, by a bill of sale made January 27, 1892, whereby he transferred to defendants his entire stock in trade, saloon fixtures and furniture of every kind, accompanied by possession of the saloon.

Upon the question as to the purpose and intent with which this transfer was made Healy testified on behalf of plaintiff:

"I was not able to attend to my business myself at that time. I was at home at the time of this transfer.

I was sick and Thomas Donohue was running the business. I saw on that day that I would be unable to pay my bills as they came due, and for that reason I turned over my business to the defendants. I had friendship for E. Commins & Co. in a business way. They started me up and that was all—nothing more than in a business way. I sent Thomas Donohue to the place of E. Commins & Co., to see them with reference to turning the saloon and business over to them.

"Q. Why did you not send to some of your other creditors instead of to Mr. Commins? A. They were my heaviest creditors, and I thought it was only right to turn the place over to them. I intended to give them the preference; that is why I sent down a man to turn the place over to them. I do not know what goods I had in the place on the 27th of January, 1892, that I had bought from E. Commins & Co., or what goods I had there that I had bought from other parties."

One Donohue testified:

" I was barkeeper for Mr. Healy, and remember the bill of sale or assignment to E. Commins & Co. from Mr. Healy. I went down to see Mr. E. Commins myself. Mr. Healy owed considerable money then and could not pay his bills, and he turned the place over to Mr. Commins. January 28, 1892, was steamer day, and we expected bills to be presented on that day, but I do not know the amount of bills that were expected. The bills due amounted to fifteen hundred or sixteen hundred dollars as near as I can judge. We did not have any money to pay those bills with, and there was not enough of goods on hand to pay that amount. I went on behalf of Mr. Healy down to see Mr. E. Commins, and I called upon him on the twenty-seventh day of January, 1892, and saw himself, and told him how there were bills, and that Mr. Healy was sick, and was not able to attend to his business, and that he had no money to meet those bills to-morrow, being collection day, and that he wanted to turn the place over to him. He said: ' All right; I will make a bill of sale, and you can take

it out to Mr. Healy, and have him sign it, and bring it back to me, and I will go down and take possession of the place.' I did so; I took the bill of sale out to Mr. Healy and had him sign it, and brought it back to Mr. Commins and gave it to him, and he told me to go up to the place, and he would be up there inside of an hour and take possession of it, and I did so. I went back, and he came there about 3 or 4 o'clock in the afternoon and took possession of the place, and put another gentleman in there, and I walked out. I told him that the next day was steamer day, and that Mr. Healy had no money to pay any of the bills that were due.

" He said that he had been a friend of Mr. Healy, and if anybody was to get the place that he knew that we could not pay the bills, and that he was entitled to it, as he had given Mr. Healy the goods in the first start, and if anybody should have any preference he was entitled to it. Then he asked me what bills were due, and I told him I could not tell him the amount of the bills that were due for whiskey, cigars, etc. I did not name any of the creditors."

Defendant Edward Commins, and his book-keeper, gave testimony tending to contradict the witness Donohue as to his statement that he informed defendants of the financial condition of Healy at the time. They testified that Donohue said nothing about Healy owing any one else. That he gave as the sole reason for the transfer that Healy was sick and had to go out of business. That defendants had no knowledge of any other debts owing by Healy, and no reason to believe him insolvent; that the transfer was taken by them solely in pursuance of an understanding they had with Healy that he should turn the business over to them in the event of his retiring.

In this state of the evidence it is idle for appellant to contend that the evidence was without conflict as to the purposes for which the transfer was made. Their argument is largely a suggestion of facts going to show that the witness Donohue had acted in bad faith in the

transaction, and was not worthy of belief—reasons which, addressed to a jury, might tend to affect the question of his credibility, but which have no place in discussing the question as to whether there was a conflict of evidence upon the point in question.

It is obvious that, if the jury believed his testimony and that of Healy, there was evidence to sustain their verdict.

The evidence of the alleged understanding between Healy and defendants about turning the saloon over to the latter was, perhaps, admissible on the question of the intent of the parties in making the transfer, but only for such purpose. If it constituted a valid or binding contract between the parties to it, which is doubtful, it was clearly void as against creditors, as being in direct contravention of the provisions of the Insolvent Act. Under it the parties could have accomplished indirectly the very thing denounced by section 55 of that act as fraudulent. Even if clearly established, therefore, such verbal understanding constituted in itself no defense to the action.

2. It is claimed that the court erred in charging the jury that the bill of sale in question given by Healy was not a sale in the ordinary course of business, and was therefore *prima facie* fraudulent and void.

The instruction was clearly right. It appeared without conflict that the business of Healy was that of saloon-keeper, a vendor of liquors in retail quantities, or drinks, over the bar. The bill of sale constituted a disposition of the entire business in bulk, and was, therefore, not a transfer in the ordinary course of the business in which the seller was engaged; and it was right for the court to so charge the jury as matter of law.

Nor, for the reasons above stated, was the instruction erroneous because it ignored the alleged agreement or understanding between Healy and defendants.

For the same reasons it was not error for the court to exclude the offered evidence of a custom among liquor

dealers to enter into similar arrangements with saloon-keepers.

We find no error in the record.

Judgment and order affirmed.

GAROUTTE, J., and HARRISON, J., concurred.